IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY ALLEN McCLELLAN, | ) | |
| AIS #277145, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-363-WHA-SMD |
| | ) | |
| KARLA JONES, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the Court on a Complaint (Doc. 1) filed by Jefferey Allen McClellan ("McClellan"), a state inmate, challenging actions which occurred during his incarceration at the Ventress Correctional Facility ("Ventress"). Specifically, McClellan alleges Defendant acted with deliberate indifference to his safety when she failed to protect him from a sexual assault by inmate Bryon Phillips ("Phillips") on April 29, 2016. *Id.* at 3.  Plaintiff alleges the assault occurred because Defendant refused to speak with him ***after*** the assault and because the office established by the Alabama Department of Corrections ("ADOC") pursuant to the Prison Rape Elimination Act ("PREA") failed to promptly respond to his call to its hotline reporting the sexual assault. *Id.*  Finally, McClellan complains he was denied an adequate investigation of the assault.

---

[1]All documents and attendant page numbers cited in this Recommendation are those assigned by the Clerk in the docketing process.

*Id.* McClellan names Karla Jones ("Jones"), the warden of Ventress at the time the challenged actions transpired, in her individual capacity as the sole defendant in this case. *Id.* at 1. McClellan seeks monetary damages and the criminal prosecution of Defendant for the alleged violations of his constitutional rights. *Id.* at 4.

Defendant filed a special report, supplemental special report, and relevant evidentiary materials in support of her reports—including affidavits, prison reports and medical records—addressing the claims presented by McClellan. (Docs. 18, 25). In these filings, Defendant denies she acted with deliberate indifference to McClellan's safety and also asserts she did not violate any of his constitutional rights.

The Court issued an Order (Doc. 26) directing McClellan to file a response to the arguments set forth by Defendant in her special report and supplement thereto and advising him that his response should be supported by affidavits or statements made under penalty of perjury and other appropriate evidentiary materials. *Id.* at 2. The Order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Id.* at 3. McClellan

filed unsworn responses to the defendant's reports on August 4, 2016 and September 15, 2016, respectively.  (Docs. 23, 27).[2]

Pursuant to the directives of the above described order, the undersigned construes Defendant's special report (Doc. 18) and supplemental special report (Doc. 25) as a motion for summary judgment.   Upon consideration of Defendant's Motion for Summary Judgment, the evidentiary materials filed in support thereof and the sworn Complaint, the undersigned concludes that summary judgment is due to be granted in favor of Defendant.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(a)).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding

---

[2]The undersigned declines to consider McClellan's responses to Defendant's reports because these responses are not sworn statements or signed with an averment that they were made under penalty of perjury.  *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment."); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the *pro se* inmate plaintiff's unsworn statement] in determining the propriety of summary judgment.").

that moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his/her burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When a defendant meets her evidentiary burden, as she has in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our

4

inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  The court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. 1981)[3] (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant and materiality is determined by the substantive law

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

applicable to the case. *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine [dispute] for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences[4] are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint, affidavit or declaration sworn under penalty of perjury may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny

---

[4] Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A. Deliberate Indifference — Failure to Protect

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex*

*rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Eleventh Circuit has consistently held that "to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this

substantial risk, the official must react to this risk in an objectively unreasonable manner."

*Marsh*, 268 F.3d at 1028-29.  As to the subjective elements, "the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists [to the inmate], and [she] must also draw the inference. . . .  The Eighth

Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual

'punishments.'  . . .  [A]n official's failure to alleviate a significant risk that [she] should

have perceived but did not, while no cause for commendation, cannot under our cases be

condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837-38; *Campbell v.*

*Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

(11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of

due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not

inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel

and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each

individual Defendant must be judged separately and ***on the basis of what that person knew at the time of the incident***." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (emphasis added). A correctional official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection. Merely negligent failure to protect an inmate from attack does not justify liability under section 1983[.] . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted).

Consequently, to survive the properly supported motion for summary judgment filed by the defendant, McClellan must first demonstrate an objectively substantial risk of serious harm existed to him from Phillips prior to the altercation with this inmate and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, McClellan must then satisfy the subjective component. To do so, McClellan "must [show] that the defendant subjectively knew that [McClellan] faced a substantial risk of serious harm from [his inmate attacker]. Defendant must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

McClellan alleges Jones acted with deliberate indifference to his safety regarding a sexual assault committed against him by Phillips, a fellow inmate, on April 29, 2016. In support of this claim, McClellan maintains that, a few days after the assault, Jones "refused to speak to him when she was standing outside" the facility. (Doc. 1) at 3. He also alleges that the PREA office did not timely respond to his call to its hotline in which he reported the assault by Phillips. *Id.* Defendant denies she acted with deliberate indifference to McClellan's safety. (Doc. 17) at 1. Importantly, Defendant maintains she had no knowledge that inmate Phillips posed any risk of harm to McClellan prior to the challenged assault. (Doc. 18) at 7-8. Defendant also asserts she lacked knowledge that McClellan generally feared for his safety at the time of the altercation at issue. *Id.* Finally, she denies Jones' claim that PREA failed to investigate his complaint filed with that office as his

prison file contains documents indicating that an investigation by the PREA office began a few days after the assault. *See* Doc. 18-1 at 2.[5]

McClellan has failed to offer any evidence that Defendant was aware of a strong likelihood that he would be assaulted by inmate Phillips. McClellan does not allege, and the record is devoid of evidence, that he provided information to Defendant of a credible threat made to him by Phillips from which Defendant could infer that a substantial risk of imminent harm existed to McClellan from Phillips before the assault at issue occurred. In sum, there is no evidence before the Court that, prior to the incident, Defendant had knowledge of any impending risk of serious harm posed by Phillips to McClellan. Instead, the record establishes that the altercation occurred without notice or provocation on April 29, 2016 at approximately 4:30 p.m. when Phillips and two unidentified inmates approached McClellan on the yard at Ventress, pulled a knife on him, ordered him to walk with them to Dormitory F1, and then forced him to perform oral sex on Phillips. (Doc. 18-1) at 2.

McClellan has failed to present any evidence showing Phillips posed "an objectively substantial serious risk of harm" to him prior to the sexual assault about which he complains, a requisite element for establishment of deliberate indifference. *Marsh*, 268

---

[5] In his unsworn responses, Jones alleges that, prior to the assault by Phillips, he sought protection from unidentified members of the Southern Brotherhood, an Alabama-based white supremacist prison gang, due to an alleged "hit" he believed this gang had placed on his life. (Doc. 23) at 2; (Doc. 27) at 1. McClellan, however, does not mention fear of harm by Phillips. McClellan also asserts Defendant should have known Phillips posed a serious threat to him because Phillips was a problem inmate who had committed prior sexual assaults against other inmates. (Doc. 23) at 7; (Doc. 27) at 2. As previously noted, the undersigned does not consider assertions made by Jones in unsworn responses. *See, supra* at 3, n.2. Nevertheless, even had the undersigned considered the responses, the allegations set forth therein by Jones regarding a general fear for his safety from the Southern Brotherhood and that Phillips was a problem inmate would not establish either the objective or subjective elements of his deliberate indifference claim against Defendant.

F.3d at 1028-29.  Furthermore, even if McClellan had satisfied the objective component, his deliberate indifference to safety claim nevertheless fails as the record is devoid of evidence that Defendant was subjectively aware of any risk of harm to him posed by Phillips prior to the assault.  *Johnson*, 568 F. App'x at 722 (holding that the district court properly dismissed the inmate-plaintiff's case because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Chatham v. Adcock*, 334 F. App'x 281, 293-94 (11th Cir. 2009) (holding that where Plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim.  While [Plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . ., he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him.  Simply put, the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . .  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment

14

because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants prior to the attack] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life."). The record in this case contains no evidence showing that Defendant acted with deliberate indifference to McClellan's safety. Thus, summary judgment is due to be granted in favor of the defendant on the failure to protect claim.

**B. Respondeat Superior**

In his Complaint, McClellan alleges that Officer Dennis "was aware of what was going on [at the time of the assault] and turned his back and walked outside." (Doc. 1) at 3. To the extent McClellan seeks to hold Jones liable for the actions of a correctional officer, he cannot do so as the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh*, 268 F.3d at 1035 (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228,

1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.).  "[E]each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Thus, liability for the alleged inaction of Officer Dennis could attach to Jones only if she "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [her] actions . . . and the alleged constitutional deprivation."  *Cottone*, 326 F.3d at 1360.  Additionally, "when individuals are being sued in [their] individual capacities for damages for personal injuries, the causation inquiry must be more refined and focused than that undertaken . . . where only declaratory and injunctive relief [are] sought for constitutional violations pervading an entire prison system."  *Williams*, 689 F.2d at 1383.

McClellan does not allege that Jones was personally involved with the lack of action by Officer Dennis on the day of the assault.  Thus, to establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Defendant, McClellan must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [she] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his safety], or . . . facts [that] support an inference that [the named defendant] directed [Officer Dennis] to act unlawfully, or knew that [he] would act

unlawfully and failed to stop [him] from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). Here, "the inquiry into causation must be a directed one, focusing on the duties and responsibilities . . . of the individual defendant[] whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams*, 689 F2d 1381. After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that McClellan has failed to meet this burden.

The record before the Court contains no evidence to support an inference that the defendant directed Officer Dennis to act unlawfully or knew that he would act unlawfully and failed to stop such action. In addition, McClellan has presented no evidence of obvious, flagrant or rampant abuse of a continuing duration in the face of which the defendant failed to take corrective action. Finally, there is nothing before the Court demonstrating that Officer Dennis acted pursuant to a policy enacted by Defendant. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is likewise not justified. For the foregoing reasons, summary judgment is due to be granted in favor of Defendant with respect to liability based on the theory of respondeat superior.

## C. Negligence — Inadequate Security

McClellan alleges that Defendant acted with negligence in providing security to him. This allegation fails to state a claim of constitutional magnitude. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) internal quotation marks and citations omitted) (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. . . .  We have previously rejected reasoning that would make of the

Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States."); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) ("[N]egligence claims are not actionable under § 1983, but are the grist of state law."); *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1999)) (emphasis added) (It is well-settled "[t]hat . . . 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional due process.'").   Consequently, the "[m]ere[] negligent failure [of a defendant] to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537; *King*, 997 F.3d at 261 ("Negligence, even gross negligence, is not enough.").

## D.  Lack of Investigation

McClellan complains that Defendant denied him an investigation of the altercation with inmate Phillips.  (Doc 1) at 3.  This allegation, however, fails to state a claim cognizable in this cause of action.  "It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).  "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dept. of Soc. Svs.*, 489 U.S. 189, 196 (1989).  "The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (NDNY 2014); *Wilkins v. Illinois Dept. of Corr.*, 2009 WL 1904414, *9 (S.D. Ill.

2009) (recognizing that inmates have no constitutional right to an investigation by correctional officials of their claims); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (SDNY 2003) (holding that prisoners do not have a due process right to an investigation of grievances). Based on the foregoing, the court concludes that the alleged lack of an investigation does not rise to the level of a constitutional violation and, therefore, provides McClellan no basis for relief.[6]

## E.  Criminal Prosecution

Insofar as McClellan seeks to have state criminal charges brought against Defendant, he is due no relief from this Court. A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (holding that a plaintiff has no constitutional right to have a defendant criminally prosecuted); *Napier v. Baron*, 198 F.3d 246, 1999 WL 1045169, *1 (6th Cir. 1999) (holding that "the district court properly dismissed [Plaintiff's] complaint as frivolous . . . [because] contrary to [his] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted."); *Rockefeller v. United States Ct. of Appeals Office for Tenth Cir. Judges*, 248 F. Supp. 2d 17, 23 (DDC 2003) (finding that criminal statutes "do not convey a private right of action."); *Risley v. Hawk*, 918 F. Supp. 18, 21

---

[6]The court notes that the undisputed prison records filed by the defendant establish that the facility's PREA compliance officer, Brian Gordon, conducted an investigation of the assault committed against McClellan by inmate Phillips, including an initial interview with McClellan on May 4, 2019, Doc. 18-1 at 2, and monitoring McClellan's situation at Ventress by thereafter conducting additional interviews with him. Doc. 18-1 at 4–6.

(DDC 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997) (finding that no private right of action exists under federal statute criminalizing conspiracies to deprive an individual of his constitutional rights); *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex. 1997) (citations omitted) (finding that although "18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States[,] [t]he statute does not create a private cause of action.").  Thus, any request for criminal prosecution of the defendant alleges violation of a legal interest which clearly does not exist and summary judgment is therefore due to be granted in favor of the defendant on this claim.

## F.  Supplemental Jurisdiction

To the extent McClellan seeks relief from this Court on a pendent state law claim of negligence, he is likewise entitled to no relief.  Review of any pendent state tort claim is only appropriate upon exercise of this Court's supplemental jurisdiction.  In the posture of this case, however, the undersigned concludes that exercise of supplemental jurisdiction over any potential state tort claim is inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'"  *Jackson v. Stinchcomb*, 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."  *L.A. Draper and Son*, 735 F.2d at 428

Since the federal claims presented by McClellan provide no basis for relief in the instant cause of action, the undersigned finds that the potential pendent state negligence claim is due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).  The undersigned, therefore, declines to exercise supplemental jurisdiction over the state tort negligence claim and makes no determination with respect to the merits of this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the undersigned Magistrate Judge that:

1.  Plaintiff's claims alleging violations of his constitutional rights be dismissed with prejudice;

2.   Plaintiff's supplemental state tort claim of negligence be dismissed without prejudice to any right Plaintiff may have to proceed on this claim before the state courts;

3.   Defendant's Motion for Summary Judgment be GRANTED insofar as it addresses claims alleging violations of Plaintiff's constitutional rights under 42 U.S.C. § 1983;

4.  This case be dismissed;

5.  Judgment be entered in favor of Defendant and against Plaintiff on his claims alleging violations of his constitutional rights; and

6.  Costs be taxed against Plaintiff.  It is further

ORDERED that, **on or before July 9, 2019**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which an objection is made.  Frivolous, conclusive, or general objections will not be considered by the court.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 25th day of June, 2019.


/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE